UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————x
DARLENE GOLDEN,                                  :
                                                 :          OPINION AND
          Plaintiff,                             :          ORDER
                                                 :
     v.                                          :          10-CV-8933 (ER)
                                                 :
THE COUNTY OF WESTCHESTER,                        :
WESTCHESTER DEPARTMENT OF PUBLIC                  :
SAFETY, WESTCHESTER POLICE                        :
DEPARTMENT, and OFFICER GERARDO                   :
GIZZO,                                           :
                                                 :
          Defendants.                            :
—————————————————————x

RAMOS, D.J.:

          Plaintiff Darlene Golden was the only passenger in a car that Westchester County Police

Officer Gerardo Gizzo pulled over on the Bronx River Parkway on November 30, 2007.  Officer

Gizzo determined that the driver of the car had an expired license, and before transporting the

two away from the highway in his police vehicle, Officer Gizzo conducted a pat-down search of

both the female driver and Ms. Golden.  Ms. Golden brought this Section 1983 action against

Officer Gizzo, the County of Westchester, its Public Safety Department, and its Police

Department.  She alleges that Officer Gizzo committed an unreasonable search in violation of

her Fourth Amendment rights and that the municipal entities are liable for failing to properly

hire, train, and supervise him.  She also alleges violations of New York state law.

          Defendants moved for summary judgment on all claims.  The Court GRANTS

Defendants summary judgment to Officer Gizzo and the County on the federal claims and

declines to retain supplemental jurisdiction over the state law claims.  The Court DISMISSES

the Public Safety Department and the Police Department.

## I. BACKGROUND

### A. Facts

On November 30, 2007, at approximately 9:00 a.m., Darlene Golden was riding in a car on the Bronx River Parkway that her friend Sheniqua Smith was driving.  *See* Def.'s Rule 56.1 Statement ¶¶ 1-3.  Officer Gerardo Gizzo pulled the car over after Ms. Smith attempted to cross from the left lane of the three-lane highway to a right lane exit ramp.  *See id.* ¶ 3.  Officer Gizzo approached the vehicle, told Ms. Smith that he had pulled her over for the lane change, and asked for her identification.  *See id.* ¶ 4. He returned to the police vehicle and came back to Ms. Smith's car about five to ten minutes later and told Ms. Smith that her license was expired.  *See id.* ¶ 4.

Around this time, two other officers arrived on the scene.  *See id.* at ¶¶ 4-5.  Officer Gizzo testified that he determined that, because Ms. Smith did not have a valid license, he needed to impound the car.  Declaration of Jane Hogan Felix in Support of Motion for Summary Judgment ("Felix Dec."), Ex. C, Part 2 at 56.  Because the car was to be impounded, Officer Gizzo decided he needed "[t]o remove [Ms. Smith and Ms. Golden] from the highway to a safe area."  *Id.*, Ex. C, Part 3 at 95.  He claims that the need to transport them in his police vehicle was the reason for his search.  Def.'s Reply Mem. in Support of Summary Judgment at 2.

He had Ms. Smith step out of the car and searched her.  Def.'s Rule 56.1 Statement ¶ 4. According to Ms. Smith, she asked about having a female officer perform the search, but got no response.  *Id.*, Ex. A at 24-25.  He also had her take a breathalyzer test, which she passed.  *Id.* at ¶ 5.

Officer Gizzo then asked Ms. Golden to step out of the car, to place her hands on the back of the car, and to remove her jacket. *See id.* at ¶¶ 5-6. He asked if he could search her jacket. *See id.* She consented, and he searched it. *See id.*

Officer Gizzo then searched her person. *See id.* Ms. Golden also asked if a female officer could perform the search, but also got no response. Felix Dec., Ex. B, Part 1 at 17.

Ms. Golden testified about the search at two separate depositions. In the first deposition, she described the search this way:

> He had me stand up with my hands out. He search me up this way, went across my breast, came back that way. . . [t]hen he told me to put my hands on the back of the car, and he searched my bottom part. He went up my [ankles], came back up, touched my private part, went back down, told me to turn around, and he came down and searched the back of me.

*Id.*, Ex. A, Part 2 at 22-23. In the second description, Ms. Golden provided a similar account:

> He turns around. He touched my breasts, okay. He touched my [genital area] . . . He touched me from behind. He went all the way down, checked my ankles and everything. And I was standing.

*Id.*, Ex. B, Part 1 at 16-17.

Officer Gizzo also testified that he conducted a "general pat-down with [his] hand" on Ms. Golden. *Id.*, Ex. C, Part 3 at 75. He specifically denied touching her breasts or genitals. *Id.* at 78.

After searching Ms. Golden, Officer Gizzo escorted her and Ms. Smith to the back seat of his vehicle and drove them to the Fleetwood, New York train station. *See* Def.'s Rule 56.1 Statement ¶ 14; Compl. ¶ 30.

### B. Procedural History

On November 29, 2011, Ms. Golden filed her Complaint.  She named as Defendants Officer Gizzo and three municipal entities—the County of Westchester, its Public Safety Department, and its Police Department.  *See* Compl. ¶¶ 11-13.

Ms. Golden is pressing five causes of action:  two sounding in federal law and three in state law.  First, she brings a claim under 42 U.S.C. § 1983 against Officer Gizzo, alleging that he committed an unreasonable search, thereby violating her Fourth Amendment rights.  *Id.* ¶ 31. Second, she alleges that Officer Gizzo violated her rights to equal protection and against discrimination under New York's Constitution and laws by searching her on the basis of her race.  *Id.* ¶ 35-36.  Third, she alleges he falsely imprisoned her under New York law through the allegedly unreasonable search.  Id. ¶ 40.  Fourth, she brings a Section 1983 claim against the municipal Defendants, alleging that they failed to properly hire, train, and supervise Officer Gizzo, resulting in the allegedly unreasonable search.  *Id.* ¶ 45.  Fifth, she alleges Officer Gizzo committed a battery against her under New York law.  *Id.* ¶ 49.

Officer Gizzo and the municipal Defendants answered, raising qualified immunity as a defense.  *See* Answer ¶ 19.  After discovery, Defendants moved for summary judgment.


## II. DISCUSSION

### A. Summary Judgment Standard and the Law of Section 1983

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, a district court is instructed not to "weigh evidence," but to "resolve all ambiguities and draw all inferences in favor of the non-moving

party" so as to ascertain "whether any reasonable trier of fact would have to conclude that the evidence was so strongly in the defendant's favor that there remained no genuine issue of material fact for it to resolve."  *Nagle v. Marron*, 663 F.3d 100, 105 (2d Cir. 2011).

Because Defendants are moving for summary judgment, the Court will resolve all ambiguities and draw all inferences in favor of Ms. Golden.

Ms. Golden's two Fourth Amendment claims against Defendants are causes of action under 42 U.S.C. § 1983.  In order to state a claim under Section 1983, a plaintiff must allege that: (1) a right secured by the Constitution or federal law was violated by defendants; and (2) the alleged violation was committed by a person acting under color of state law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

### B. Unreasonable Search Claim against Officer Gizzo

#### 1. Qualified Immunity

In his Answer, Officer Gizzo raised the defense of qualified immunity.  "A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." *Manganiello v. City of New York*, 612 F.3d 149, 164 (2d Cir. 2010) (citations, brackets, ellipses, and quotation omitted).

The Second Circuit recently explained that "[q]ualified immunity thus affords government officials breathing room to make reasonable—even if sometimes mistaken— decisions, and protects all but the plainly incompetent or those who knowingly violate the law

from liability for damages." *DiStiso v. Cook*, — F.3d —, No. 10–4304–cv, 2012 WL 3570755, at *10 (2d Cir. Aug. 21, 2012) (citations and quotations omitted).  Therefore, "[w]hether qualified immunity applies in a particular case generally turns on the objective legal reasonableness of the challenged action, assessed in light of the legal rules that were clearly established at the time it was taken."  *Id.* (citations and quotations omitted).

The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Under a qualified immunity analysis, "[f]irst, a court must decide whether the facts that a plaintiff has alleged . . .  make out a violation of a constitutional right," *id.*, and then "[s]econd, if the plaintiff has satisfied this first step, whether the right at issue was clearly established at the time of defendant's alleged misconduct."  *Id.*  The Supreme Court has allowed "district courts . . . to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 236.

### 2. The Fourth Amendment Claim

Ms. Golden claims that Officer Gizzo "subject[ed] [her] to an unreasonable and unjustified search," thereby violating her Fourth Amendment rights.  Compl. ¶ 31.  She is not challenging the constitutionality of the stop.  Instead, she is challenging the pat-down search of her person by Officer Gizzo, which she claims was conducted without "articulable suspicion." *See* Pl.'s Mem. in Opposition to Summary Judgment at 7.

Officer Gizzo concedes that he conducted a "suspicion less" search.  *See* Def.'s Reply Mem. at 2.  He claims that he "made the determination that in accordance with police protocol

[Ms. Smith and Ms. Golden] would have to be patted down prior to being transported in his police vehicle." *Id.*

"The Fourth Amendment provides that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *Terry v. Ohio*, 392 U.S. 1, 8 (1968) (quotation omitted). But, as the Supreme Court has explained, "the specific content and incidents of this right must be shaped by the context in which it is asserted. For what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Id.* at 9 (quotation omitted).

In *Terry*, the Court endorsed "a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Id.* at 27. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*

The Second Circuit applied *Terry* to a situation in which an officer searched a civilian before the civilian entered the back of the officer's police vehicle in *U.S. v. McCargo*, 464 F.3d 192, 201 (2d Cir. 2006). In *McCargo*, the civilian had been stopped by the police "blocks from a reported attempted burglary," and "[t]he officers decided to take [him] back to the scene of the alleged crime to see if the victim could identify him. Because the officers planned to transport him in the back of their patrol car, they frisked him for weapons in accordance with a departmental policy." *Id.* at 195.

The Second Circuit addressed the constitutionality of that policy and reasoned that "the dangers posed to police officers in situations where a suspect, who may be armed, is placed in

the rear of a police car are substantially different and greater than those posed in the typical *Terry* stop.  The increased threat to police safety informs the balance to be struck between the safety interests of the police and the privacy interests of individuals." *Id.* at 200-01.

The panel concluded that "[p]ermitting a limited frisk for weapons before placing a suspect in a police car, pursuant to an established policy, reflects an appropriate balancing of the interests at stake. Because the suspect is placed in the rear of the car—a location where, were he armed, he would expose the officers to peril—we think the most reasonable, and least intrusive, solution is to permit a pat-down for weapons." *Id.* at 201.

The *McCargo* court explicitly allowed that pat-downs pursuant to such a policy would be suspicion-less: "The justification for the pat-down is not that the suspect is reasonably suspected of being armed; it is rather a matter of sound police administration: police officers should be certain before transporting members of the public, whom they do not know, that none of them is armed." *Id.*  The panel specifically emphasized that the police department's policy would reduce the risk of biased enforcement: "The fact that the policy is administrative and universally applied to all who are transported eliminates any selective-use concern." *Id.*

The Court agrees with Officer Gizzo that *McCargo* controls this case.  Ms. Golden acknowledges *McCargo*, but attempts to distinguish it on two grounds.  Each distinction she proposes is unavailing.

First, she says she "was not like the defendant in *McCargo*, who was being transported to the scene of a crime as to which he was a suspect" whereas she "was merely a passenger in a motor vehicle that was stopped for a violation."  Pl.'s Mem. at 8.  But *McCargo* upheld a "department-wide policy that requires the pat-down *whenever* a person is transported in a police car," 464 F.3d  at 201 (emphasis added), and did not rely on Mr. McCargo's status as a potential

suspect.  Neither the identity of the civilian to be transported nor the purpose for which the civilian is transported was part of the reasoning of *McCargo*.

Second, Ms. Golden notes that Officer Gizzo conceded that he "had no 'articulable suspicion' that [she] was armed" and contends that he has "not pointed to one single fact which supports a concern for 'officer safety.'"  Pl.'s Mem. at 9.  But Officer Gizzo need not point to any fact indiciating a specific risk; the *McCargo* panel specifically disclaimed reliance on any suspicion that Mr. McCargo was armed.  464 F.3d  at 201.

Even if there were some ambiguity about whether *McCargo* applied to the facts of this case, its status as precedent in this Circuit at the time of the incident giving rise to this case flatly precludes any argument that Officer Gizzo violated Ms. Golden's "clearly established" constitutional rights.  *See Manganiello*, 612 F.3d at 164.

*McCargo* is sufficient to defeat the Fourth Amendment claim that Ms. Golden articulates in her Complaint.  But, in her Memorandum, Ms. Golden appears to suggest that the search Officer Gizzo conducted went beyond a pat-down.  She emphasizes that Officer Gizzo searched Ms. "Golden's breasts and vaginal area."  Pl.'s Mem. at 12.  But instead of arguing that these facts demonstrate that Officer Gizzo went beyond the pat-down search he was justified in conducting, Ms. Golden only contends that "[t]he manner in which the search was conducted provides further evidence that it was done not because of 'officer safety,' but because, simply, [Officer] Gizzo had no respect for [Ms. Golden's] rights."  *Id.* at 13.

The Supreme Court has stated that the reasonableness of a search under the Fourth Amendment "depends on not only when a seizure is made, but also how it is carried out." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985).  For example, in *Fontana v. Haskin*, 262 F.3d 871 (9th Cir. 2001), the Ninth Circuit held that "unreasonable, non-consensual, inappropriate

touching" can constitute "unreasonable intrusions into [a plaintiff's] bodily integrity in violation of the Fourth Amendment." *Id.* at 880-81.

But the search that Ms. Golden described does not state such a violation.  She testified that Officer Gizzo touched her breasts and genital area during the pat-down.  *See* Felix Dec., Ex. A, Part 2 at 22-23.  Officer Gizzo has specifically denied doing so, but for purposes of this motion, the Court accepts as true Ms. Golden's recitation of the facts.

Even assuming Ms. Golden's version, however, she still is unable to make out a constitutional violation.  The search conducted by Officer Gizzo, as described by Ms. Golden, was a minimally intrusive, above the clothing pat-down.  As the Ninth Circuit stated in *Fontana*, "[o]f course, not every truthful allegation of sexual bodily intrusion during an arrest is actionable as a violation of the Fourth Amendment.  Some bodily intrusions may be provably accidental or *de minimis* and thus constitutionally reasonable."  262 F.3d at 880.  Ms. Golden's deposition suggests that Officer Gizzo at most committed such a *de minimis* intrusion.  *See* Felix Dec., Ex. A, Part 2 at 22-23.  That it may have included incidental contact with her breasts and genital area does not alter the analysis.  *See Cherney v. City of Burnsville*, 2008 WL 108964, at *7 (D. Minn. Jan. 8, 2008) (explaining that "routine pat-down searches, even if they include the groin area, do not violate the Constitution just because an officer of the opposite gender conducts the search" (quotation omitted)).

Ms. Golden also raises the issue that she "asked about being searched by a female officer."  Pl.'s Mem. at 12.  Simply put, there is no constitutional right to be patted down by a person of the same sex.  As a district court in this Circuit noted, "courts have repeatedly found that the fact that a pat-down search incident to arrest is conducted by an officer of the opposite sex of the arrestee does not, absent some additional evidence of improper conduct during the

search, convert a lawful search incident to arrest into an unlawful one," *Stokes v. City of New York*, No. 05-CV-0007 (JFB), 2007 WL 1300983, at *12 n.9 (E.D.N.Y. May 3, 2007) (collecting cases), and the Court sees no reason why this search should be treated any differently.  The precedent is clear that Officer Gizzo's actions in patting down Ms. Golden prior to transporting her in his police vehicle were reasonable and minimally intrusive as a matter of law.  *McCargo*, 464 F.3d at 201.  Therefore, the Court GRANTS Officer Gizzo summary judgment on Ms. Golden's Fourth Amendment claim.

### C. Municipal Liability Claim

Ms. Golden has sued the County of Westchester, its Public Safety Department, and its Police Department.

The Public Safety Department and the Police Department are not suable entities.  Another district court recently stated that "several cases have held that municipal departments cannot be sued under New York law."  *In re Dayton*, 786 F. Supp. 2d 809, 818 (S.D.N.Y. 2011) (collecting cases).  Therefore, "where both the municipality and the municipal department have been named as defendants, courts routinely have dismissed the claims against the department."  *Id.* (collecting cases).  Accordingly, the Court DISMISSES the Westchester Public Safety Department and the Westchester Police Department from this action.

Ms. Golden's remaining claim against the County is a claim for municipal liability.  A municipality cannot be held liable under Section 1983 solely on a theory of *respondeat superior*. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  A Section 1983 claim can only be brought against a municipality if the action that is alleged to be unconstitutional was the result of an official policy or custom.  *Id.* at 690-91.  Thus, a plaintiff must allege that such a municipal policy or custom is responsible for his injury.  *Bd. of Cnty. Comm'rs of Bryan Cnty. v.*

*Brown*, 520 U.S. 397, 403 (1997); *see also Connick v. Thompson*, — U.S. —, 131 S. Ct. 1350, 1360 (2011) ("A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell*, 436 U.S. at 692)).

 The Second Circuit has established a two prong test for § 1983 claims brought against a municipality.  First, the plaintiff must prove "'the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official].'"  *Johnson v. City of New York*, No. 06 CV 09426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).  Second, the plaintiff must establish a causal connection between the policy or custom and the alleged deprivation of his constitutional rights.  *Id.*

 To satisfy the first prong of the test on a motion to dismiss, a plaintiff must allege the existence of:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials, or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal citations and quotation marks omitted); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (quoting *Moray* and updating citations to cases).

 Ms. Golden alleges that the County

failed to properly screen Office[r] Gizzo for employment; failed to properly test his understanding of the law of the United States and the State of New York as to searches and seizures; failed to correct his lack of understanding; failed to follow his progress;

failed to supervise his actions on November 30, 2007 when it became clear to supervisory personnel that his actions were improper and illegal; failed to properly train him in the conduct of traffic stops; failed to instruct him on the proper way to conduct himself around persons of different genders, races, color, or national origin.

Compl. ¶ 46.

The Court need not reach the merits of these claims.  As the Second Circuit has stated, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).  When a district court concludes that there is "no underlying constitutional violation," it need not address "the municipal defendants' liability under *Monell*."  *Id.*

Therefore, the Court GRANTS the County summary judgment on Ms. Golden's *Monell* claim.

### D. Dismissal of State Law Claims

Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise jurisdiction over any non-federal claims over which it could have supplemental jurisdiction if the Court has dismissed all of the claims over which it has original jurisdiction.  Subject matter jurisdiction in the instant action is based on federal question, 28 U.S.C. § 1331, and the jurisdictional counterpart to Section 1983 for claims alleging a deprivation of "equal rights."  28 U.S.C. § 1343(3).  Having granted summary judgment to Officer Gizzo and the County on Ms. Golden's two federal claims, it would be inappropriate to adjudicate her state law claims.  Therefore, all state law claims in the Complaint are hereby dismissed.  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

**III. CONCLUSION**

For the foregoing reasons, the Court DISMISSES the Westchester Public Safety Department and the Westchester Police Department from this action.

The Court GRANTS summary judgment to Officer Gizzo and the County on the federal claims. The Clerk of the Court is respectfully directed to terminate this motion (Doc. 15).

The Court declines to retain supplemental jurisdiction over the state law claims against them and therefore DISMISSES those claims without prejudice.

The Clerk of the Court is respectfully directed to close this case.

It is SO ORDERED.

Dated: September 18, 2012
White Plains, NY

Edgardo Ramos, U.S.D.J.

14